UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROMAN Y GORDILLO, S.C. and ALBERTO ROMAN PALENCIA,<br><br>*Plaintiffs*,<br><br>-against-<br><br>THE BANK OF NEW YORK MELLON CORPORATION, *As Successor-In-Interest To* THE BANK OF NEW YORK, INC.,<br><br>*Defendant/Third-Party Plaintiff,*<br><br>-against-<br><br>GRUPO AZUCARERO MEXICO, S.A. DE C.V.,<br><br>*Third-Party Defendant.* | **ECF Case**<br><br>**12-CV-0212 (LGS)(DCF)** |

**THE BANK OF NEW YORK MELLON'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO AMEND ANSWER**

Of Counsel:

Ira L. Herman
Gabrielle E. Farina

**THOMPSON & KNIGHT LLP**
900 3rd Avenue, 20th Floor
New York, New York 10022
Tel:    (212) 751-3001
Fax:    (212) 751-3113

*Attorneys for Defendant-Third-Party Plaintiff
The Bank of New York Mellon*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT AND BACKGROUND ........................................................... 1

    A.  The Parties And Facts Underlying This Lawsuit ................................................. 2
    B.  New York's Borrowing Statute, CPLR § 202, Applies to This Case ........................... 3
    C.  Summary of The Parties' Contentions On This Motion ..................................... 4

ARGUMENT ................................................................................................... 6

    I.    UNDER THE RULE 15(a)(2) STANDARD, THE MOTION TO AMEND
SHOULD BE GRANTED ................................................................................. 6

    A.  The Rule 15(a)(2) Standard .................................................................. 6
    B.  The Proposed Amendment Is Not Futile ...................................................... 7

        1.  Under The Engagement Letter, The Mexican Statute of Limitations Applies
As a Matter of New York Law ................................................................. 7
        2.  Under New York Law, The Borrowing Statute Applies Because Plaintiffs Are
Residents Of Mexico And Their Cause Of Action Accrued In Mexico ........................ 9
        3.  The Applicable Mexican Statute of Limitations Is Two Years And Plaintiffs'
Claim Is Time-Barred ........................................................................ 10

    C.  There Is No Undue Delay or Prejudice ..................................................... 11
    D.  There Is No Bad-Faith ....................................................................... 13

    II.  ALTHOUGH RULE 16(b)(4) DOES NOT APPLY, THE MOTION TO AMEND
WOULD STILL BE GRANTED UNDER THE 16(b)(4) STANDARD ................................. 14

    A.  Rule 15(a)(2), Not Rule 16(b)(4), Governs This Motion .................................... 14
    B.  The Motion to Amend Meets The Balancing Standard Of the Factors under Rule 15
and Rule 16(b)(4) .............................................................................. 16

CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*Anderson News, LLC v. American Media, Inc.,*
680 F.3d 162 (2d Cir. 2012) .................................................................................................. 6

*Arneil v. Ramsey,*
550 F.2d 774 (2d Cir. 1977) .................................................................................................. 9

*Block v. First Blood Associates,*
763 F. Supp. 746 (S.D.N.Y. 1991), *aff'd*, 988 F.2d 344 (2d Cir. 1993).................................. 15

*Block v. First Blood Assocs.,*
988 F.2d 344 (2d Cir. 1993) ................................................................................. 7, 14, 20, 22

*Boritz v. Financial Information Services Agency,*
1997 WL 791591 (2d Cir. Dec. 26, 1997) ............................................................................. 7

*Calabro v. Stone,*
2005 WL 327547 (E.D.N.Y. Jan. 27, 2005), *report and recommendation adopted*,
2005 WL 563117 (E.D.N.Y. Feb. 25, 2005) ................................................................... 19, 20

*Castro v. City of New York,*
2010 WL 889865 (EDNY March 6, 2010) ..................................................................... 19, 20

*Eureka v. LLC v. Town of Ridgefield,*
2012 WL 4487718, at *32-33 (D. Conn. Sept. 28, 2012) ...................................................... 13

*Fitzgerald v. Thompson,*
187 A.D.2d 557 (2d Dep't 1992) .......................................................................................... 10

*Galluzzo v. Peerless Mach. & Tool Corp.,*
2008 WL 5169453 (S.D.N.Y. Dec. 9, 2008) .......................................................................... 7

*Global Fin. Corp. v. Triarc Corp.,*
93 N.Y.2d 525, 715 N.E.2d 482, 693 N.Y.S.2d 479 (1999).......................................... 3, 4, 11

*Grochowski v. Phoenix Const.,*
318 F.3d 80 (2d Cir. 2003) .................................................................................................. 19

*Jin v. Metro. Life Ins. Co.,*
310 F.3d 84 (2d Cir. 2002) ............................................................................................. 7, 13

*Kat House Productions, LLC v. Paul, Hastings, Janofsky & Walker,*
71 A.D.3d 580, 897 N.Y.S.2d 90 (1st Dep't 2010) ............................................................... 11

*McFadden v. Monroe County Sheriff,*
2002 WL 1348508 (W.D.N.Y. 2002) .................................................................. 8

*N. Assur. Co. of Am. v. N. E. Marine, Inc.,*
2013 WL 587089 (S.D.N.Y. Feb. 11, 2013)........................................................ 17

*ORIX Fin. Servs., Inc. v. Holmes,*
2007 WL 3143707 (S.D.N.Y. Oct. 26, 2007) ...................................................... 10

*Portfolio Recovery Associates, LLC v. King,*
14 N.Y.3d 410 (2010) ........................................................................................ 11

*Primetime 24 Joint Venture v. DirecTV, Inc.,*
2000 WL 426396 (S.D.N.Y. Apr. 20, 2000) ....................................................... 15

*Rescildo v. R.H. Macy's,*
187 A.D.2d 112 (1st Dep't 1993) ....................................................................... 10

*Sanzone v. Donovan,*
2010 WL 4668338 (E.D.N.Y. 2010) .................................................................... 7

*Savoy v. White,*
139 F.R.D. 265 (D. Mass. 1991)............................................................. 11, 13, 16

*Schiller v. City of New York,*
2009 WL 497580 (S.D.N.Y. Feb. 27, 2009)........................................................ 20

*Sears, Roebuck & Co. v. Enco Assocs., Inc.,*
43 N.Y.2d 389, 401 N.Y.S.2d 767, 372 N.E.2d 555 (1977)................................. 7, 8

*Tel Comm Technologies, Inc. v. City of Bridgeport, CT,*
2006 WL 3791383 (D. Conn. Dec. 22, 2006)...................................................... 20

*Trans Video Electronics, Ltd. v. Sony Electronics, Inc.,*
278 F.R.D. 505 (N.D.Cal. 2011), *aff'd,* 475 Fed.Appx. 334, 2012 WL 3243590 (9th Cir. 2012) ...................................................................................................... 16

*Tucker v. Janney Montgomery Scott, Inc.,*
1997 WL 151509 (S.D.N.Y. April 01, 1997) ........................................................ 9

*Velez v. SES Operating Corp.,*
2008 WL 2662808 (S.D.N.Y. July 3, 2008) ......................................................... 7

*Woori Bank v. Merrill Lynch,*
--- F.Supp.2d ---, 2013 WL 449912, at *2 (S.D.N.Y. Feb. 6, 2013)...................... 7, 9

## STATUTORY AUTHORITIES

N.Y. Civ. Prac. L. & R. § 202 ................................................. 3, 4, 7, 8, 9, 13, 18

## RULES AND REGULATIONS

F.R.C.P. 15(a)(2)...................................................................................................... 1, 4, 6, 14, 19

Fed. R. Civ. P. 16(b)(4).................................................................................................... 1, 16

Pursuant to the Court's Order of May 31, 2013,[1] The Bank of New York Mellon ("BNYM"), Defendant/Third-Party Plaintiff respectfully submits this memorandum of law, together with the Declarations of Ira L. Herman ("Herman Decl."), Jeffrey M. Eilender ("Eilender Decl."), and Leonel Pereznieto ("Pereznieto Decl."), in support of its motion pursuant to F.R.C.P. 15(a)(2) to amend its answer to assert as a Seventh Affirmative Defense that this action is barred by the applicable statute of limitations.  Although BNYM believes that Rule 15(a)(2) rather than Rule 16(b)(4) governs the proposed amendment, out of an abundance of caution, BNYM also moves in the alternative, pursuant to Rule 16(b)(4), to modify the Amended Scheduling Order, dated December 5, 2012 (herein referred to as the "Second Scheduling Order") to so amend its answer.  A copy of the proposed amended answer is attached as Exhibit 1 to the Herman Decl.

## PRELIMINARY STATEMENT AND BACKGROUND

BNYM moves to amend as the Mexican two year statute of limitations should govern in the instant action.  The May 31, 2013, Order permitting this motion, directed the Parties to address: "[1] the analysis under Rules 15(a) and 16(b)(4) of the Federal Rules of Civil Procedure; and [2] how the addition of the statute of limitations affirmative defense would substantively impact the case."  First, the discussion and legal analysis of the rules that follows leads to only a single conclusion – the motion should be granted.

Second, the addition of a statute of limitations affirmative defense could lead to the dismissal with prejudice of the entire lawsuit as time barred.  It is BNYM's intention to complete discovery under the current schedule, and then move for summary judgment based on the statute of limitations, as well as other defenses.  Thus, it is BNYM's expectation that the statute of

---

[1] As modified by the Order dated June 4, 2013.

limitations defense will result in the granting of summary judgment in favor of BNYM and dispensing with a trial.

A.  **The Parties And Facts Underlying This Lawsuit**

This is an action by a Mexican attorney and his law firm to collect a contingent fee for representing BNYM, as Indenture Trustee, with respect to an insolvency case filed in Mexico, known as a "suspension of payments" proceeding, by Third-Party Defendant Grupo Azucarero Mexico, S.A. de C.V. ("GAM").

By an engagement letter dated March 23, 2005 (but entered into as of December 31, 2004) (the "Engagement Letter") between BNYM and Plaintiff Roman Y Gordillo, S.C., BNYM, as Indenture Trustee, retained Plaintiffs as counsel in the Mexican suspension of payments proceeding.  (*See* Engagement Letter, attached as Ex. 2 to the Herman Decl.).  The Engagement Letter provides, in relevant part, that "[t]his agreement will be governed by and construed in accordance with the laws of the State of New York."  (*Id.* at Pg. 3).

It is undisputed that Plaintiffs ceased providing services and were no longer counsel to BNYM by September 10, 2008, when Plaintiffs herein commenced an action in Mexico against BNYM to collect the fees at issue in this case.  (Herman Decl. ¶ 6).  That lawsuit was dismissed on November 12, 2009, for lack of jurisdiction.  (*Id*. ¶ 7).

Plaintiffs commenced this action on January 11, 2012, and filed an Amended Complaint on January 17, 2012.  (Herman Decl. ¶¶ 3-4).  The original and Amended Complaints assert a single cause of action to collect fees allegedly due under the Engagement Letter.  (*Id*.)

Plaintiffs claim they earned $1.5 million, including a "final bonus payment" under the Engagement Letter based on a "Total Recovery" obtained by the bondholders from GAM in the suspension of payments case.  BNYM maintains that: (a) Plaintiffs have been fully paid whatever amounts they earned under the Engagement Letter, and (b) Plaintiffs are not entitled to

a bonus payment, because, *inter alia*, the Plaintiffs did not recover any amounts that would give rise to such a bonus payment under the express terms of the Engagement Letter. Additionally, BNYM asserts a counterclaim for Plaintiffs' damages arising from Plaintiffs' wrongful refusal to turn over a Certifico Deposito (the "CD")[2] to BNYM, as Plaintiffs' client.

**B.  New York's Borrowing Statute, CPLR § 202, Applies to This Case**

The New York statute of limitations for a breach of contract action is six years. However, because Plaintiffs are non-residents of New York and their cause of action accrued outside the State, CPLR § 202 applies. CPLR §202 provides:

> An action based upon a cause of action without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state, the time limited by the laws of the state shall apply.

(N.Y. CPLR § 202).

In other words "[w]hen a non-resident sues in a cause of action accruing outside of New York, CPLR§ 202 requires the action to be timely under the limitations of both New York and the jurisdiction where the cause of action accrued." *Global Fin. Corp. v. Triarc Corp.,* 93 N.Y.2d 525, 528, 715 N.E.2d 482, 693 N.Y.S.2d 479 (1999). As explained below, for the purposes of the borrowing statute, a cause of action for economic injury accrues where the plaintiff resides. Because Plaintiffs are Mexican residents, the applicable Mexican statute of limitations applies under CPLR § 202. Moreover, as explained below and in the Pereznieto Decl.,[3] the limitations period for a claim for payment for the provision of legal services is two years, with the statute running from the last services provided by counsel. Inasmuch as Plaintiffs

---

[2]  The CD is a non-negotiable instrument reflecting GAM's final payment to the bondholders in the suspension of payments case. It has diminished substantially in value due to the loss of value of the peso as compared to the U.S. Dollar.

[3] Mr. Pereznieto is a Mexican lawyer with experience with Mexico's statutes of limitations.

were terminated no later than September 10, 2008 and did not file this action until January 11, 2012, their case is time barred.

C.  **Summary of The Parties' Contentions On This Motion**

BNYM only recently gained an understanding of the applicable Mexican law and its implications for the application of CPLR § 202 to this case.   (Herman Decl. ¶¶ 33-34). Therefore, BNYM now moves to amend its Answer to assert a Seventh Affirmative Defense that this entire case must be dismissed because of the statute of limitations.

In pre-motion correspondence with the Court, Plaintiffs opposed this motion arguing that Rule 16(b)(4), not Rule 15(a)(2), should govern because the Second Scheduling Order set a deadline for BNYM to amend its Answer.  This is incorrect, as the Second Scheduling Order and related correspondence show that there is no such deadline with respect to BNYM amending its affirmative defenses.  The only deadline was for BNYM to amend, **as of right,** its counter-claim relating to the diminution of the value of the CD that Plaintiffs belatedly delivered to BNYM in this proceeding–nearly four years after GAM gave it to Plaintiffs.   Thus, Rule 16(b)(4) is inapplicable here, as the Second Scheduling Order did not set a deadline for this motion to be made or for other amendments to be made by the parties in this case.

Rule 15(a)(2) governs here, and its standard for amendment is readily satisfied.   The amendment is not futile, meaning that the proposed affirmative defense would withstand a motion to dismiss or strike.   Nor have Plaintiffs suffered any <u>undue</u> prejudice inasmuch as all documents relating to this defense have been exchanged by the Parties, depositions have only just begun, and the Plaintiffs were on notice of this proposed defense (by reason of BNYM's pre-motion letter to the Court) after the first deposition in this case, which was of GAM.   Such

deposition did not relate to this defense.[4]  In contrast, during Plaintiff Roman's deposition, which occurred after BNYM wrote to the Court asking for permission to make this motion, Plaintiff Roman was questioned extensively about the facts underlying the limitations defense. Plaintiffs' counsel was aware of this defense well ahead of Plaintiff Roman's deposition and had an opportunity to prepare Plaintiff Roman to address it during his deposition.  Indeed, only hours after the deposition, Plaintiffs' counsel wrote a letter to the Court concerning the limitations defense, indicating that counsel was well aware of it.  (Herman Decl. Ex. 9).  Plaintiffs have noticed the depositions of at least three BNYM witnesses; they have yet to occur.  Thus, Plaintiffs have the ability to question those witnesses on the limitations issue.  (Herman Decl. ¶ 29).  Finally, **after** the Court issued its Order permitting BNYM to make this motion, Plaintiffs served a Fourth Document Request on BNYM and GAM including requests relating to the statute of limitations defense.  (Herman Decl. Ex. 10).

The only argument Plaintiffs have made about the proposed amendment being futile is that because the choice of law provision in the Engagement Letter requires application of New York law, the Mexican statute of limitations does not apply.  This argument misconstrues New York law.  As discussed below, the courts in this District repeatedly have held that where, as here, a non-resident plaintiff sues for breach of an agreement with a New York choice of law clause, complying with that clause means applying the New York borrowing statute and therefore, applying the statute of limitations from the plaintiff's place of residence if such limit would bar the action.  In other words, here, applying the Mexican statute of limitations **is applying New York law**.  Thus, the proposed amendment certainly is not futile.

---

[4] Plaintiffs were also on notice by way of BNYM's affirmative defense of laches, which alerted Plaintiffs to BNYM's intent to argue delay on the part of Plaintiffs in commencing this action.

Even if Rule 16(b)(4) applied, the result would be the same.  The Rule requires a blended analysis between its standard and that of Rule 15(a)(2) with the greatest emphasis on undue prejudice to a non-movant; there is none here.  Accordingly, the motion to amend should be granted.

## ARGUMENT

### I.   UNDER THE RULE 15(a)(2) STANDARD, THE MOTION TO AMEND SHOULD BE GRANTED

#### A.  The Rule 15(a)(2) Standard

BNYM easily satisfies the Rule 15(a)(2) standard.  Motions to amend are freely granted. *See, e.g., Anderson News, LLC v. American Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).  A motion to amend should be granted unless the proposed amendment is futile or asserted in bad-faith or will cause undue prejudice to the opposing party.  *Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir. 2002).  Delay in and of itself cannot be a basis to bar a proposed amendment. *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993).

Furthermore, the failure to raise a limitations defense in an answer does not waive the defendant's right to move to amend its answer pursuant to Rule 15(a)(2) to include such a defense.  *See Boritz v. Financial Information Services Agency*, 1997 WL 791591 (2d Cir. Dec. 26, 1997) (affirming grant of motion to amend answer on day of trial to add limitations defense); *Galluzzo v. Peerless Mach. & Tool Corp.*, 2008 WL 5169453 (S.D.N.Y. Dec. 9, 2008) (granting leave to amend answer to assert limitations defense); *Velez v. SES Operating Corp.*, 2008 WL 2662808 (S.D.N.Y. July 3, 2008) (same); *Sanzone v. Donovan*, 2010 WL 4668338, at *3 (E.D.N.Y. 2010) (leave to amend answer to include a statute of limitations defense would not violate Rule 12(c), nor contravene the factors to be considered in determining whether to grant a

Rule 15 motion, and granting motion); *McFadden v. Monroe County Sheriff*, 2002 WL 1348508, at *3 (W.D.N.Y. 2002) (noting that leave to amend to add a limitations defense may be granted).

## B.  The Proposed Amendment Is Not Futile

Here, the amendment is clearly not futile.  Analysis of the proposed statute of limitations defense begins with the Engagement Letter, which requires the application of New York law to Plaintiffs' non-payment claim.  Under New York law, we next analyze CPLR § 202, and its application here.

### 1.  Under The Engagement Letter, The Mexican Statute of Limitations Applies As a Matter of New York Law

In the pre-motion correspondence with the Court, Plaintiffs argue that the application of the Mexican statute of limitations contravenes the New York choice of law provision in the Engagement Letter.  This is incorrect.  Rather, applying New York's substantive law as required by the Engagement Letter means applying CPLR § 202 because Plaintiffs are non-residents and the cause of action accrued outside New York.  *See supra* at 3.  Section 202 of the CPLR, in turn, requires application of the Mexican statute.  *See Sears, Roebuck & Co. v. Enco Assocs., Inc.,* 43 N.Y.2d 389, 397–98, 401 N.Y.S.2d 767, 772, 372 N.E.2d 555 (1977) (contract provision that the agreement was to be governed by Michigan law also imported Michigan's law with respect to limitations, including the borrowing statute, which in turn required application of New York law concerning limitations).  Therefore, as a matter of New York law, to survive dismissal the claims must be timely under New York and Mexican law.  *Woori Bank v. Merrill Lynch,* --- F.Supp.2d ----, 2013 WL 449912, at*2 (S.D.N.Y. Feb. 6, 2013).

Courts in this District have rejected the very same argument Plaintiffs make here and have held that CPLR § 202 must be applied as a matter of New York law to import a foreign statute of limitations where the plaintiff is an out-of-state resident suing on a cause of action that

accrued in a foreign jurisdiction.  In *Tucker v. Janney Montgomery Scott, Inc.*, 1997 WL 151509 at *1, (S.D.N.Y. April 01, 1997), for example, the customer agreement between the plaintiff, a Pennsylvania resident, and defendant Janney Montgomery Scott required the application of New York's substantive law regardless of its choice of law principles.   The defendant moved to dismiss the fraud claim based on Pennsylvania's two year statute of limitations, which applied *via* CPLR § 202 because it was shorter than New York's limitations period.   Plaintiff opposed the motion to dismiss, arguing that applying the Pennsylvania limitations period contravened the agreement's New York choice of law clause.   Citing the New York Court of Appeals' *Sears* case, discussed above, Judge Stanton disagreed—holding that applying CPLR § 202 was applying New York law, because this CPLR provision was a substantive New York rule.  *See also Arneil v. Ramsey,* 550 F.2d 774, 779 (2d Cir. 1977) ("Because the provisions of the federal statute sued upon do not specify a limitations period, this court, in determining whether the action is timely brought, must refer to the statute of limitations of the forum state, New York. This includes reference to New York's "borrowing statute," N.Y.C.P.L.R. Section 202.") (citations omitted).

Likewise, in *ORIX Fin. Servs., Inc. v. Holmes*, 2007 WL 3143707, at *3 (S.D.N.Y. Oct. 26, 2007), Judge Scheindlin concluded that CPLR § 202 applied where the contractual provision called for application of New York law, "with the exception of New York's choice of law rules." Judge Scheindlin reasoned that the "the borrowing statute remains relevant because it is not a choice of law rule," but New York substantive law.   Moreover, because this substantive rule represents a strong public policy by the State of New York, even where the law of the foreign state requires application of the forum state's statute of limitations (the principle of *renvoi*), New York courts have held that CPLR § 202 nevertheless requires application of the foreign statute of

limitations if it is shorter than the New York limitations period. *See, e.g.*, *Rescildo v. R.H. Macy's*, 187 A.D.2d 112, 117 (1st Dep't 1993) (concluding that "acceptance of *renvoi* defeats the purpose of the borrowing statute and its underlying policy – to prevent forum shopping by nonresident plaintiffs seeking a longer statute of limitations"); *accord Fitzgerald v. Thompson*, 187 A.D.2d 557, 558 (2d Dep't 1992) (same). Thus, adhering to the New York choice of law provision in the Engagement Letter means applying the Mexican statute of limitations applicable to Plaintiffs' breach of contract claim.

### 2. Under New York Law, The Borrowing Statute Applies Because Plaintiffs Are Residents Of Mexico And Their Cause Of Action Accrued In Mexico

For purposes of the borrowing statute, a cause of action accrues in the place where the plaintiff is injured. *Kat House Productions, LLC v. Paul, Hastings, Janofsky & Walker*, 71 A.D.3d 580, 897 N.Y.S.2d 90 (1st Dep't 2010) ("Generally, a tort action accrues at the time and place of injury . . . .") (citation omitted); *Global Fin. Corp.*, 93 N.Y.2d at 529 (applying "place of the injury rule" to contract actions under CPLR §202). "If the claimed injury is an economic one, the cause of action typically accrues where the plaintiff resides and sustains the economic impact of the loss." *Portfolio Recovery Associates, LLC v. King*, 14 N.Y.3d 410, 416 (2010) (applying CPLR § 202); *see also Woori Bank,* --- F.Supp.2d at ----, 2013 WL 449912, at *3 ("Because Woori is a resident of Korea and any injury is wholly economic, the Court finds that [for purposes of CPLR § 202] Woori's cause of action accrued in Korea").

In this case, Plaintiffs' contract claim against BNYM accrued in Mexico, where the Plaintiff law-firm is incorporated and has its place of business; where Plaintiff Roman, a natural person, resides; and where Plaintiffs' claimed injury has its economic impact. Accordingly, CPLR § 202 applies to establish the applicable statute of limitations as that of the foreign jurisdiction – Mexico.

**3.   The Applicable Mexican Statute of Limitations Is Two**
     **Years And Plaintiffs' Claim Is Time-Barred**

BNYM's Mexican law expert has offered evidence that under Article 1161 of the Federal

Civil Code of Mexico (the "FCC") the statute of limitations for a claim for the non-payment for

services is two years.[5] (Pereznieto Decl. ¶¶ 17-18.)  The statute begins to run at the time services

ceased to be rendered.  *Id.*  Here, Plaintiffs ceased providing services to BNYM and the

bondholders in September 2008 and this action was commenced on January 17, 2012.  Thus,

Plaintiffs' action is time-barred.

Furthermore, no tolling of the statute applies, or even if it did it would not change that

result.   As explained in the Pereznieto Decl., under Mexican law, Plaintiffs' initial lawsuit

against BNYM in Mexico did not toll the limitations period because it was dismissed for a

procedural defect.  (Pereznieto Decl. ¶¶ 20-21.)  Moreover, even if Plaintiffs' time to bring their

claim was tolled for the 14 months that the initial Mexican lawsuit against BNYM lasted, the

instant action was still brought more than two years after Plaintiffs ceased providing services.

The second action that Plaintiffs brought in Mexico (to execute on the CD) was not a

lawsuit against the bank for payment of fees and thus under Mexican law would not toll the

limitations period.  (Pereznieto Decl. ¶ 22.)  In any event, the second Mexican case was brought

in February 2012, underline(after) this case was filed in New York.  Thus, this second case is irrelevant to

any tolling determination.  (Herman Decl. ¶ 8).

Moreover, the two Mexican cases have no bearing on the limitations defense here.   In

September 2008, Plaintiffs sued BNYM in Mexico.   Based on the New York choice of law

clause in the Engagement Letter, the Mexican trial court (and then the appellate court) held that

---

[5] Article 1161.   The statute of limitation will be two years for the following cases: I. Consideration, salaries,
wages and other retributions for rendering of any services.   The statute of limitation will commence on the date on
which the services ceased to be rendered (…)

Mexico did not have jurisdiction over the dispute.  At no time did Plaintiffs or BNYM ever argue that New York's six year statute of limitations governed.   Rather, the statute of limitations issue never came up at all in that litigation.  Nor could it have, because the statute had not run when the first Mexican proceeding was filed on September 10, 2008.

The filing of the second Mexican case cannot lead to a contrary result.  Rather, the filing of the second Mexican case is indicative of Plaintiffs' bad faith in their course of dealing with BNYM.  In February 2012, after Plaintiffs' already commenced their case in this Court, and without informing Judge Pauley, BNYM, or GAM, Plaintiffs commenced an action in Mexico to execute on the CD, claiming it as security for their claims in this case.  (Herman Decl. ¶ 8). Even though BNYM and GAM did not appear, as they had not been properly given notice of the complaint in the second Mexican case, the Mexican trial and appellate courts denied the application, holding that Plaintiffs must first obtain a judgment in this Court.  (Herman Decl. ¶ 9).  Again, the statute of limitations was not raised at all.  Indeed, Plaintiffs had no reason to discuss it and BNYM and GAM, ignorant of the proceeding, did not appear and thus made no arguments at all.

**C.  There Is No Undue Delay or Prejudice**

Permission for this motion was requested a little more than four months after BNYM served its last pleading, and thus there was no undue delay.  *Savoy v. White*, 139 F.R.D. 265, 269 (D. Mass. 1991) (four-month delay between court's denial of plaintiff's original count for breach of fiduciary duty and plaintiff's filing of motion to amend was not inordinate so as to require denial of amendment).  The key question is whether Plaintiffs are unduly prejudiced by the proposed amendment.  *See Jin,* 310 F.3d at 101.  Delay in and of itself cannot be a basis to bar a proposed amendment.  *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993).  The

touchstone is **not** whether the amended pleading may undermine a party's litigating position, as will almost always be the case for the party opposing amendment.

There is no cognizable undue prejudice to Plaintiffs here.  Plaintiffs have ample opportunity to develop evidence surrounding the statute of limitations issue and later to oppose dismissal of their claims in the course of future motion practice – motion practice that has not yet even been scheduled in this case.  Whether the statute of limitations bars the action here depends solely on when Plaintiffs stopped performing services for BNYM and commenced their various litigations against BNYM.  Theoretically, when Plaintiffs commenced the first Mexican case and when it was dismissed might be relevant, although as explained in the Pereznieto Decl., that first Mexican case did not toll the statute of limitations under Mexican law.  Even if the statute of limitations was tolled during the pendency of the first Mexican case, this action would still have been filed too late under Mexico's statute of limitations.

The limited discovery necessary to develop these facts consists of documents in Plaintiffs' own possession, in documents already produced by the parties, or that appear on the docket in this action.  The only witness to be deposed prior to Mr. Herman's May 24, 2013 letter seeking permission to make this motion was GAM's CEO.  GAM was not a client of Plaintiffs and has no testimony to offer on when Plaintiffs stopped performing services for BNYM or when Plaintiffs filed this action.  Defendant BNYM's witnesses have not been deposed and may be fully questioned by Plaintiffs' counsel on any facts relating to the statute of limitations issue, the Engagement Letter and other relevant matters.  **After** the Court issued its May 31, 2013 Order permitting BNYM to make this motion, Plaintiffs served a Fourth Document Request on BNYM and GAM.  (Herman Decl. Ex. 10).  And if Plaintiffs believe that still further discovery is necessary on the statute of limitations issue, they may serve additional narrowly tailored

requests addressed to that issue and/or may depose BNYM's Mexican law expert.   Thus, Plaintiffs cannot demonstrate undue delay or prejudice.

### D.  **There Is No Bad-Faith**

As explained in the Herman Decl., it was only recently that counsel for BNYM (and counsel for GAM) obtained a complete understanding of the facts surrounding the Mexican proceedings commenced by Plaintiffs and the effect of the Mexican statute of limitations and how CPLR § 202 applied under these circumstances.   Any delay in this realization does not constitute bad-faith.  In *Block v. First Blood Associates*, 763 F. Supp. 746, 748 (S.D.N.Y. 1991), *aff'd*, 988 F.2d 344 (2d Cir. 1993), the defendant did not avail itself of the limitations defense until an unrelated Second Circuit case was decided and made defendant realize that, even based on the law before that Second Circuit decision, there were questions of whether plaintiffs' claims were timely.   Indeed, *Block* concerned the same borrowing statute, CPLR § 202, at issue here, which it appears defendant's counsel did not initially consider, as is true of BNYM's counsel here.  The Court permitted the amendment, noting that plaintiffs had shown only that defendant's failure to avail itself of the statute of limitations prior to time of motion for amendment was the result of inadvertence, and thus no bad faith could be established.  In *Primetime 24 Joint Venture v. DirecTV, Inc.*, 2000 WL 426396 (S.D.N.Y. Apr. 20, 2000), the court held that when the opponent of an amendment asserts that the movant is acting in bad faith, there must be something more than mere delay or inadvertence for the court to refuse to allow amendment. *See also Trans Video Electronics, Ltd. v. Sony Electronics, Inc.*, 278 F.R.D. 505 (N.D.Cal. 2011), *aff'd*, 475 Fed.Appx. 334, 2012 WL 3243590 (9th Cir. 2012) (bad faith present where proposed amendment foreclosed by prior rulings); *Eureka v. LLC v. Town of Ridgefield*, 2012 WL 4487718, at *32-33 (D. Conn. Sept. 28, 2012) (bad faith existed because proposed claim not related to underlying action and interposed solely for delay); *Savoy v. White*, 139 F.R.D. at 269

(bad faith evidenced by attempt to avoid summary judgment ruling).  There will be no delay in the resolution of this action or the creation of additional motion practice, as no additional discovery is required and BNYM is willing to complete discovery as scheduled and to wait to include argument on the limitations defense in a summary judgment motion that BNYM intends to make (and always had intended to make) at the conclusion of discovery.  If anything, the amendment would likely shorten this case, as it will likely cause the dismissal of the case after discovery is complete and spare the parties and the Court a trial.

## II.   ALTHOUGH RULE 16(b)(4) DOES NOT APPLY, *THE MOTION TO AMEND WOULD STILL BE GRANTED UNDER THE* 16(b)(4) STANDARD

### A.  Rule 15(a)(2), Not Rule 16(b)(4), Governs This Motion

Plaintiffs' argument that BNYM must show good cause to obtain leave to amend pursuant to Rule 16(b)(4) is misplaced.  As an initial matter, Rule 16(b) does not apply since there is no scheduling order that imposed a final deadline for amending pleadings in this action. *N. Assur. Co. of Am. v. N. E. Marine, Inc.*, 2013 WL 587089 (S.D.N.Y. Feb. 11, 2013) ("The short answer to [plaintiff's argument that good cause must be shown under Fed. R. Civ. P. 16(b)] is that the scheduling order did not impose a deadline for pleading amendments" and granting motion to amend).  There have been three scheduling orders in this case—two entered by Judge Pauley, and one by Judge Schofield.  Neither the first one dated June 13, 2012, (Herman Decl. ¶ 12), nor the last one dated May 7, 2013 (Herman Decl. ¶ 25), addresses amendments to pleadings.

The Second Scheduling Order dated December 10, 2012, likewise does not establish any time limit for any party to amend.  (Herman Decl. Ex. 3).  Rather, it established a deadline for BNYM to amend as of right its "Counterclaim" regarding the diminution of the value of the CD, and was silent on any other amendments, which might be made by motion.  (*Id.*).  The genesis of

this provision and the reason it was included in the Second Scheduling Order was to address a request by Plaintiffs to move to dismiss the existing BNYM counterclaim because it was too vague. (Herman Decl. Ex. 4).  After some negotiation, the parties obviated the need for motion practice by agreeing that BNYM would add more detail by amending as of right by December 28, 2012.  The point of this was that if such amendment was made by a date certain, Plaintiffs could then evaluate whether it contained sufficient detail or whether they wanted to move to dismiss it, as explained in the joint letter to Judge Pauley of December 5, 2012, enclosing the proposed scheduling order. (Herman Decl. Ex. 5).  There was never any agreement or order limiting further amendments by BNYM — the only goal of the agreement memorialized in the Second Scheduling Order was to set a deadline for BNYM to make the one amendment that Plaintiffs wanted — amendment of BNYM's counterclaim.

The Second Scheduling Order was drafted by counsel and not the Court, and the drafting history only underscores the limited nature of deadline for BNYM to amend its counterclaim. For example, an email from one the of the lawyers to the others during the negotiation of the Second Scheduling Order, stated "as I just discussed with Sam [Butt][the attorney tasked with actually writing the joint letter to Judge Pauley and the proposed scheduling order], I believe that both the letter and the order need to be clarified so that it is clear that [BNYM] is amending **solely its counterclaim against Plaintiffs, and is not otherwise amending its Answer, affirmative defenses and Third party Complaint."**  (Eilender Decl., Ex. 3) (emphasis added). Another email among counsel during the drafting process states "**that the permitted amendment here is solely as to the Counterclaim (and not as to the Answer, affirmative defenses or third-party claims**)." (Eilender Decl. Ex. 2, at pg. 1) (emphasis added).

The plain terms of the actual scheduling order drafted, negotiated, and proposed by the parties to the Court for approval does not set a deadline for amendments. Moreover, the correspondence among the parties never addresses the concept of a deadline for amendments.

Indeed, Plaintiffs previously have taken the position that the only amendment addressed in the Second Scheduling Order, and thus the only deadline set, related to the counterclaim. When BNYM actually interposed its counterclaim, Plaintiffs wrote to the Court on a number of occasions arguing that the Second Scheduling Order, by addressing a single counterclaim, only permitted just one. (Herman Decl. Exs. 6-7). Inasmuch as on its face, and by Plaintiffs' own admission, the Second Scheduling Order concerned only the deadline to amend the BNYM counterclaim, it is inapposite for Plaintiffs to mistakenly invoke the policy underlying the holding in *Castro v. City of New York*, 2010 WL 889865 (E.D.N.Y. March 6, 2010), that a party should make an amendment within the time limit set by a scheduling order.

### B. The Motion to Amend Meets The Balancing Standard Of the Factors under Rule 15 and Rule 16(b)(4)

Even if Rule 16(b)(4) applies, leave to amend should be granted because Second Circuit case law merely requires a **balancing** of the factors under Fed. R. Civ. P. 15 and Fed. R. Civ. P. 16(b)(4). *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003). In these circumstances, balancing the relevant factors supports a grant of the motion.

Indeed, in this balancing of factors it is not necessary to establish good cause. *Calabro v. Stone*, 2005 WL 327547, at *1 (E.D.N.Y. Jan. 27, 2005) (In balancing factors under Rule 15 and 16, "good cause" need not necessarily be shown to permit amendment and noting that defendant would have opportunity to conduct discovery on new claim), *report and recommendation adopted*, 2005 WL 563117 (E.D.N.Y. Feb. 25, 2005); *Tel Comm Technologies, Inc. v. City of Bridgeport*, CT, 2006 WL 3791383 (D. Conn. Dec. 22, 2006) (Although concluding plaintiffs

"could have pursued this litigation more diligently by filing an amended complaint earlier", the Court, in balancing the standards of Rule 16(b) against those of Rule 15(a), held that "the prejudice in this case is so low that the interests of justice require that the court grant leave to amend…")

*Castro,* the case relied upon by Plaintiffs in their pre-motion letters, is readily distinguishable, since there the court denied the motion to amend because it was made after a "protracted period of discovery" and only a little more than two weeks before trial was set to begin.  However, neither of these circumstances are present here.  Where discovery is not yet complete, and there is no prejudice to a party, this balancing clearly tips in favor of permitting amendment.  *See Schiller v. City of New York,* 2009 WL 497580, at *4 (S.D.N.Y. Feb. 27, 2009) ("[i]n determining whether the defendants would be prejudiced by the amendment, [the Court] must consider whether it 'would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute."); *Calabro*, *supra*, at *1 (granting motion to amend and finding no prejudice since defendant would be given an opportunity to conduct discovery regarding the claim); *see also Block*, 988 F.2d at 350.

In this case, as discussed above, "significant additional resources to conduct discovery" will not be required to address the limitations defense and interposition of the defense will not "significantly delay the resolution of the dispute."  Indeed, it is unlikely to delay resolution at all, as fact depositions have only recently begun, and, as explained below, no additional motion practice need be built into the case schedule beyond the time already built in for summary judgment motions.  Moreover, the deadline for identifying experts has not yet occurred, so the need to depose any expert on this issue would not extend the schedule set by the court.

Plaintiff Roman was deposed on May 29, 2013 (days after his counsel was already on notice of the statute of limitations defense because of Mr. Herman's letter to the Court of May 24, 2013) (Herman Decl. Ex. 8) and questioned about issues relating to the limitations period (*i.e.* when he stopped working for BNYM, etc.).[6]   All of BNYM's fact witnesses remain to be deposed and may be asked about facts relating to the statute of limitations issues as Plaintiffs' counsel sees fit.

Plaintiffs do not dispute that all the documents relevant to the application of the statute of limitations already have been produced or can be produced, as the facts upon which the statute's application depend concern when Plaintiffs ceased to provide services and when they commenced this action.   These facts already are at issue in this case with regard to the counterclaim and affirmative defenses already plead by BNYM.   As discussed above, BNYM is not requesting a modification of the discovery schedule and would argue the limitations defense as a basis for dismissal on summary judgment, a motion it intended to make even before the statute of limitations issue arose.

There is also no showing of lack of diligence.   It took months to obtain documents relating to the first Mexican action and to interpret the Mexican statutes and litigation rules of judicial procedure.   *See Block*, 988 F.2d at 350.   Further, given that Plaintiffs' counsel himself apparently did not realize the import of CPLR **§** 202.   Plaintiffs cannot be heard to complain about any lack of due diligence on BNYM's part.   As the limitations defense presents perhaps one of the strongest arguments for dismissal of this entire case, and there is no undue prejudice

---

[6]   Because of Mr. Herman's May 24, 2013 letter, Plaintiffs' counsel was aware of the defense and had an opportunity to prepare his client to address it during the deposition.   Indeed, hours after the deposition, Plaintiffs' counsel wrote a letter to the Court dated May 29, 2013 concerning the limitations defense and thus was focused on it. (Herman Decl. Ex. 9).

or bad-faith in evidence, it would be unduly prejudicial to BNYM not to allow the proposed amendment.

## CONCLUSION

For the reasons set forth above, the Court should grant BNYM's motion to amend the Answer so as to assert a statute of limitations defense, pursuant to Rule 15(a)(2), or alternatively, the motion to modify the Amended Scheduling Order so as to permit the amendment.

Dated: New York, New York
June 14, 2013

*Respectfully submitted,*

**THOMPSON & KNIGHT LLP**

By:         /s/ Ira Herman
Ira L. Herman
Gabrielle E. Farina
900 3rd Avenue, 20th Floor
New York, New York 10022
Telephone No.: (212) 751-3001
Facsimile No. : (212) 751-3113
E-Mail: ira.herman@tklaw.com
E-Mail: gabrielle.farina@tklaw.com

*Attorneys for Defendant-Third-Party Plaintiff The Bank of New York Mellon*

**To**:       **(All Counsel; *via* ECF filing)**

7228459.3

19